LOUISE M. MILLS

*vs.*

C. EARL RICHARDSON

L. NEIL MILLS

*vs.*

SAME

Cumberland.    Opinion June 4, 1927.

*Where facts can be furnished only by witnesses having special opportunity for observation or special training, witnesses are "experts", "skillful or experienced persons", and their testimony is "expert evidence." It is the same as ordinary testimony as to facts.*

*Witnesses possessing special skill or knowledge may give their opinions on issues on which ordinary men are incapable of drawing conclusions. Such expressions of opinion is called "expert evidence."*

*Exception to a refusal to direct a verdict for defendant is waived by the prosecution of a motion for a new trial before the presiding justice; not so in case of a general motion before the Law Court.*

*Where different inferences are deducible from the same facts, it cannot be said that the plaintiff has maintained the proposition on which alone there can be recovery.*

In the case at bar a careful examination of all the evidence in the light of expert testimony of both kinds clearly shows that there were conditions resulting from childbirth, which could, as consistently as the douche, and, as time went on with greater consistency have caused the trouble complained of.

While there was evidence from which the jury could conclude there was some injury from the douche, it seems clear that the effect could not have been long continued and that the jury, obviously considering that the douche caused practically all of the conditions, erred in passing a point beyond which the alleged cause could not by a preponderance of evidence be sustained and were led by a misunderstanding of the duty imposed on the plaintiff or by sympathy to overestimate the damage.

On exceptions and motion by defendant.   Two actions on the case tried together, one brought by a wife and the other by her husband, against the proprietor of a hospital, for damages caused by alleged negligence of a nurse in giving to the plaintiff in the first case after childbirth a douche.   Verdicts of $2000 for the wife and $500 for the husband were returned.   Defendant excepted to a refusal to direct a verdict for defendant and to give requested instructions and to instructions given, and also filed a general motion.   Exceptions overruled.   Motion overruled if plaintiff remits, otherwise new trial granted.

The case is fully stated in the opinion.

*Joseph E. F. Connolly and Harry C. Libby*, for plaintiffs.

*Pattangall, Locke & Perkins*, for defendant.

SITTING: PHILBROOK, DEASY, STURGIS, BASSETT, JJ., MORRILL, A.R.J. ·

BASSETT, J.   Two actions on the case tried together and brought by the plaintiff, Louise M. Mills, and her husband against the defendant as the proprietor of a hospital for damages caused by the alleged negligence of a nurse in giving Mrs. Mills after childbirth a douche, which, either because it contained an excessive amount of bichloride of mercury or because it was too hot, burned her body. Pleas, the general issue.   Verdicts for Mrs. Mills $2000 and Mr. Mills $500.

The case comes up to this Court on exceptions to the refusal of the presiding justice to grant the motion of the defendant, made at the close of the evidence, to direct a verdict for the defendant;  on exceptions to the refusal of the presiding justice to give instructions as to the kind of evidence necessary to prove the alleged negligence and its causing the results complained of, and to the instructions given concerning such evidence;  and on general motion.

*Exceptions:*

First.   Refusal to direct a verdict for defendant.

These cases have been tried once before with verdicts for the plaintiffs, which were set aside upon general motion (125 Me. 12).   It

does not appear from the record that in the court below the question was raised whether the case presented below was substantially the same as it was before with no material change, no material strengthening, and on that ground a verdict for the defendants should have been ordered. The question therefore before us is "a demurrer to the evidence", as it appears in the record of this case, and whether upon such evidence a verdict for the plaintiff could be sustained. *Dyer* vs. *C. C. Power and Light Co.* 119 Me. 224.

The decision stated (125 Me. 15) that at the previous trial it was burning by an excessive amount of bichloride of mercury, which Mrs. Mills said caused the injuries sustained by her. That cause of burning the presiding justice eliminated by his charge and submitted only the question whether she was burned by a douche administered at too high a temperature. No exception was taken by the plaintiffs to this elimination, which was equivalent to ordering a verdict for the defendant on that alleged cause of injury.

But differing and agreeing in details, as the testimony did, as to how the douche was administered, its temperature, the immediate effects on Mrs. Mills, what was then done, the discharge on the next day of the nurse, a young girl of 18 who had entered training six months before, the admitted expression of regret by the defendant, the subsequent events, there was evidence from which the jury, if they believed it, could conclude that the douche was too hot and Mrs. Mills received thereby some injury. The exception is not sustained.

Second. Refusal to instruct and the instructions given.

The defendant requested the instruction that the plaintiff must prove (1) That the nurse was negligent. (2) That her want of skill and care caused the injury of which the plaintiff complains by expert testimony.

The Court refused and instructed as follows:

"I do not think I can give you that instruction as a general rule, altho in this case the testimony bearing upon the question must come from the experts largely and the nurse, because the results that follow from injuries of that kind perhaps can be shown only by medical testimony, until you hear the testimony of the parties themselves, as to what they experienced and what has been observed. These facts you can take into consideration and the testimony as to the

facts, and weigh the same, if you believe them, as to whether they resulted from a certain kind of treatment. The ordinary layman might not be able to furnish any testimony on that point and it may come of necessity from physicians, men of experience, who have studied these matters, men who are the only ones to assist you or guide you or furnish you any basis for consideration of anything of this kind. But in so far as any evidence of a layman is introduced from which you can draw a reasonable conclusion that any of the ills and conditions, of which Mrs. Mills complained, were facts which existed, that they can be inferred from the testimony of Mrs. Mills or her mother, you would be entitled to give credence or weight, and, if you find that the injury she suffered from, came from that, give it weight. As to whether the injuries she suffered would follow the douche, I cannot give you the general instruction that you can only find that the injury must be shown by expert testimony alone. Of course that must necessarily be the chief source from which that kind of testimony must come." We think the exceptions cannot be sustained.

The facts in any case may be in part or largely of the kind which can be furnished only by witnesses who have had special opportunity for observation or special training or special skill in observing and obtaining them. Such witnesses are experts, "skillful or experienced persons." Their testimony is and is called "expert evidence". It is however the same as ordinary testimony as to facts, but on the particular topic under consideration general experience is not sufficient, special experience is needed.

The question next arises, what inferences or conclusions are to be drawn from the facts. When the nature of the question at issue is such that men of ordinary experience and intelligence may be supposed to be incapable of drawing conclusions from the evidence without the assistance of some one, who has special skill or knowledge in the premises, witnesses possessing such skill and knowledge are permitted to give their opinions. *Conley* vs. *Gas Light Company*, 99 Me. 60. Such expression of opinion is called "expert evidence" and is the kind of evidence usually meant by the use of that phrase. But such testimony "is only an expression of opinion and is received upon the theory that their special learning and skill may render their opinion of service to the jury." *Johnson* vs. *Gas Light Company*, 125 Me. 89.

Upon expert evidence of the second kind court and jury may be more or may be less dependent according to the nature of the case. "In many cases expert evidence tho' all tending one way is not conclusive upon the court and jury but the latter as men of affairs may draw their own inferences from the facts and accept or reject the statement of experts. But such cases are where the subject under discussion is on the border line between the domain of general and expert knowledge, as for instance where the value of land is involved or where the value of professional services are in dispute. There the mode of reaching conclusions from the facts when stated is not so different from the inferences of common knowledge that expert testimony can be anything more than a mere guide. But when the case involves the highly specialized art of treating an eye for cataract or for the mysterious and dread disease of glaucoma with respect to which a layman can have no knowledge at all the court and jury must be dependent on expert evidence. There can be no other guide and when want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury." *Erving* vs. *Goode,* 78 Fed. 442.

The requested instruction would limit the proof of both issues, negligence and its cause of the injuries to "expert testimony". What kind, expert testimony as to fact or expert opinion as to conclusions to be drawn from facts? We think that both kinds must have been meant, but that proof of either issue could not properly be limited to such evidence.

There were a great many facts requiring proof of expert testimony of the first kind. The douche followed childbirth and was to be applied to the interior of the body. The structure of the interior, its condition after childbirth, before and after the douche, the susceptibility to injury by burning of the interior as compared with exterior parts, the normal conditions following childbirth, other conditions which may follow and how commonly and with what results, all these facts were to be furnished by experts and from them conclusions to be drawn on each issue.

The issue of negligence did not require expert evidence of both kinds exclusively. The treatment to be given Mrs. Mills was not a matter of "a highly specialized art." It consisted of washing by water, hot but not too hot, containing a proportion of another liquid

and flowing by gravity from a receptacle through a rubber tube with perforated nozzle. It did not require the services of a physician or of a trained nurse. Some of the fluid penetrated the interior, some of it wet the exterior as the tube was withdrawn. The immediate and subsequent sensations of Mrs. Mills, the appearance of the exterior as testified to by Mrs. Mills, and her mother, were evidence, from which the jury could draw conclusions as to the heat of the liquid and its effect, which the exercise of ordinary care and prudence by the nurse could have prevented.

On the issue of the cause of the injuries complained of, whether the conditions, from which Mrs. Mills claimed to suffer immediately, and over an extended period of time, were due to the douche or child-birth, expert evidence of both kinds must of necessity have made a large and important part of the proof increasingly so with the passing of time. But it was not exclusive proof for the testimony of Mrs. Mills and her mother was evidence from which the jury could conclude that there was immediately some burning of the exterior and also of the interior and thereby a line of causation set up, the limit of which in the intervening period was one of the issues.

The jury were correctly instructed as to the sources of the proof and the proper amount of weight to be given to it.

## Motion.

An exception to the refusal to direct a verdict for the defendant is waived by the prosecution of a motion for a new trial before the presiding justice, as otherwise the defendant would be seeking the same remedy through two tribunals, getting the benefit of the second if he failed in the first. *State* vs. *Simpson*, 113 Me. 29. The exception is not waived by the prosecution of the general motion before the Law Court. The exception and motion are not inconsistent. They each raise the same question, whether on the evidence *a* verdict can be sustained. The general motion may also, as in this case, raise the further question whether *the* verdict can be sustained.

The former question has been determined by overruling the exception to the refusal to direct a verdict.

As to the second question Mrs. Mills claimed that because of the douche she suffered much pain and discomfort, was at first unable to perform her marital duties, suffered inconvenience, nervous in-

digestion, nervousness, sleeplessness, and these continued for several years. She left the hospital two days after the douche, as she had planned, went to her mother's home in Skowhegan, remained there until she returned to her home in Portland the first of June. She was there examined by a physician in July, was treated by him and at different times by two others. At the first examination a leucorrhoeal discharge at the outlet of the uterus was found. Mrs. Mills claimed that all of her ills was caused by the douche. Mr. Mills made, as stated, on account of his wife's condition after her return home and during the period of about six years, payment for doctors bills amounting to $112 and for household services because of her inability amounting to $200. He claimed to recover for expenditures over the whole period. Yet for these serious and long continuing results of the douche neither he nor his wife made any complaint or said anything to the defendant until a few days before an action would be barred by the statute of limitations.

A careful examination of all the evidence, in the light of the expert testimony of both kinds of all the physicians, clearly shows that there were conditions of the parts, resulting from the childbirth, which could, as consistently as the douche and, as time went on, with greater consistency have caused the conditions and troubles complained of. Where different inferences are deducible from the same facts and are equally consistent with those facts, it cannot be said that the plaintiff has maintained the proposition on which alone there can be recovery. *Mosher* vs. *Smithfield*, 84 Me. 337.

While there was evidence from which the jury could conclude there was some injury from the douche, it seems clear that the effect could not have been long continued, and that the jury obviously having considered that the douche caused practically all of the conditions of which Mrs. Mills complained erred in passing a point beyond which that alleged cause could not by a preponderance of the evidence be sustained. The error may have been due to misunderstanding the duty imposed on the plaintiff or to sympathy which may also have led them to overestimate the damages. We are convinced they are excessive and that Mrs. Mills will be fairly compensated by the sum of five hundred dollars and Mr. Mills by the sum of two hundred dollars.

The entry therefore will be

> *Motion overruled, if plaintiffs within thirty*
> *days from filing of this mandate remit all of*
> *the verdicts in excess of $500 and $200 re-*
> *spectively;   otherwise motion sustained and*
> *new trial granted.*