JOSIAH W. REED ET ALII

*vs.*

CENTRAL MAINE POWER COMPANY.

Sagadahoc.    Opinion, May 19, 1934.

*Goodspeed and Fitzpatrick,* for plaintiffs.
*McLean, Fogg & Southard,*
*Nathaniel W. Wilson,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

DUNN, J.   This action is based on Revised Statutes, Chap. 109, Secs. 9 and 11.

The plaintiffs are owners of land in the town of Woolwich, bounded in part by a highway. The defendant corporation, a utility discharging a public service in owning and operating a plant, the product of which it distributes to customers for electric lighting, set poles and fixtures for the support of electrical wires upon, along, and over such highway, in front of the house on the abutting premises. At that time, (December, 1931), the house was untenanted. There is testimony that it had been occupied during summer seasons in recent years.

Plaintiffs claim damages, in different counts in the declaration, against defendant as a trespasser, for entering their close without license or authority, well beyond the exterior line of the street location, and (1) severing from ornamental trees in the dooryard, to wit, from two hickories and an elm, certain branches and limbs; (2) for cutting down twenty-nine pine and oak trees, growing within the close but outside the dooryard.

The acts are alleged to have been committed wilfully and knowingly.

Defendant pleaded the general issue, and, by brief statement, set up in justification a permit granted it by the selectmen of the town, to construct and maintain the line of posts and wires. R. S., Chap. 68, Sec. 28, as amended by Laws of 1931, Chap. 205.

The jury found specially, in answer to questions by the trial judge, facts which brought the action within the statute. R. S., (Chap. 109), supra. Thereupon, conformably to instruction, the jury determined in the instance of each trespass, "actual damages." For damage to ornamental trees, the award was $496.00; for the other trees, $25.00.

On ruling the applicability of the statutory provisions, on the authority of which the respective counts had been drawn, the judge trebled damages under the first count, and doubled the award under the second, thus entitling the plaintiffs to $1,538.00. Such procedure is not without precedent. *Quimby* v. *Carter*, 20 Me., 218; *Black* v. *Mace*, 66 Me., 49.

The defense brings the case forward on general motion and exceptions. But one ground of the motion, namely, that the damages are excessive, was argued at the bar. The inclusion of the brief goes no further. Asserted grounds for a new trial which are not argued, must be treated as abandoned.

The decision of the controversy on the merits is plainly right.

The permit, to advert to it anew, was confined to road limits. Even if the selectmen had authority to grant the right to enter on plaintiffs' land, they had not done so; their permit only gave right on the highway, and did not essay, inferentially or otherwise, any interference with adjoining estates, nor attempt to abrogate any general rule of law. A permission given, as was this, by the law,

may be lost by abusing it. Cooley on Torts, Vol. 2, Sec. 252, citing Six Carpenters' Case, 8 Co., 290; s.c., 1 Smith, L. C., 216.

For private wrongs or injuries, as those done the plaintiffs, legislative purpose is that there be full damages, in contradistinction to the recompense ordinarily recoverable in trespass quare clausum. The statute has been held remedial and not penal. *Black* v. *Mace*, supra.

The jury were allowed, as a part of the trial, to view the premises. They saw such physical objects as were properly pointed out to them, and so got a mental picture of the locus. In a land damage case, a view constitutes a special kind of evidence. *Shepherd* v. *Camden*, 82 Me., 535, 20 A., 91. See, too, *Wakefield* v. *Boston and Maine Railroad*, 63 Me., 385; and, incidentally, *State* v. *Slorah*, 118 Me., 203, 214, 106 A., 768.

Actual damages are sustained by record evidence. Consideration by the jurors of the result of their observation at the view, may have tended to strengthen evidential support. *Shepherd* v. *Camden*, supra. Independent of this, the damages are not, in a legal sense, too great.

Of the ten exceptions, one concerning an instruction as to damages, is strongly advanced as uncovering reversible error.

The judge, at one point in his charge to the jury, instructed: "and on the other hand if you in your good judgment agree with one opinion expressed here or from experience know that this property, although worn out perhaps as a farm, . . . still has a real marketable value for a summer home, and that that value has been distinctly lessened by reason of such loss as has been sustained of shade and ornamental trees by the cutting or mutilation as it is claimed of the various trees, and that that has made a distinct difference, then you will decide, and you have a right to decide, the difference for any purpose which that property might in reason and with reasonableness be appropriated."

The next following instruction was: "You have heard the testimony upon that point. You have heard the testimony of some man, experienced, who says it is available. You have heard the testimony of another man on the other side who perhaps has questioned that and who has said . . . it will sell for just as much today as it would

before the cutting was done, and that taking into account its value or its feasibility for sale as a summer home. That is left for you to determine."

Before the instruction of which defendant complains, the judge, in instructing as to the essential law of the case, had defined: "and you have seen the premises and you have heard all the testimony, and you are men of good judgment, and it is for you to say under the evidence here, if you find that there was damage unlawfully caused, what was the difference in the fair market price of that property before and after the cutting."

It would seem, from the bill of exceptions, that the understanding of counsel for defendant, of the purport of the instruction under review, was that the jury could rely upon personal knowledge concerning the adaptability of plaintiffs' place for a summer home, without reference to the evidence submitted by the parties. Counsel emphasize that the jury may have so understood it. Taken by itself, the instruction is perhaps susceptible of a double sense.

Instructions must, however,.be examined with relation to one another, and as an entirety.

"A single proposition in the charge, standing alone, might be open to objection, but taken in connection with other parts of the charge, and as it might have been understood by the jury, was not exceptionable." *Hunnewell* v. *Hobart*, 40 Me., 28, 31. Loose expressions, or simple inaccuracies, in separation from context, will be disregarded when, as a whole, instructions not only contain an entire, fair, and correct statement of the law, but are free from any misleading influence. *French* v. *Stanley*, 21 Me., 512.

A study of the charge suggests that the judge intended saying that, in ascertaining the extent of actionable loss occasioned, the jury was not bound to disregard entirely their own experience with respect to the elements which combined to make up the value of the land. *Head* v. *Hargrave*, 105 U. S., 45, 26 Law ed., 1028; The Conqueror, 166 U. S., 110, 41 Law ed., 937.

The general rule is that the legal limit of information upon which a jury may base their action, is facts truly found, so far as humanly possible, from a fair preponderance of the evidence. Yet, in weighing and applying evidence, jurymen may invoke their

everyday experience. *Lunney* v. *Shapleigh*, 112 Me., 172, 90 A., 496. They need not lay aside the general information acquired and known to them, as intelligent members of the community. They may examine the case committed to them in the light of their common observation of what it involves; and have the right to draw all reasonable deductions from the evidence. While they may not validly render a verdict on the particular knowledge of individual jurors, they may, in making up their verdict, rightfully be influenced by their general knowledge and experience of like subjects, as well as by the testimony and opinion of witnesses. *Patterson* v. *Boston*, 20 Pick., 159, 166; *Murdock* v. *Sumner*, 22 Pick., 156, 158; *Bee Printing Co.* v. *Hichborn*, 4 Allen, 63, 65; *Head* v. *Hargrave*, supra.

Of the other exceptions, that going to trebling one, and doubling the other, jury award of damages, has already been indicated meritless. *Quimby* v. *Carter*, supra; *Black* v. *Mace*, supra. Four of the remaining exceptions relate to instructions given by the judge to the jury; three to refusals to give requested instructions, except as modified, or as had been given; and the last to the admission of testimony. The point of none of these approximates, in worth, that first of mention in this opinion.

"It is our duty, in deciding on the exceptions, to look to the whole evidence, and not disturb the verdict when the facts proved," furnish a substantial support therefor. *Farrar* v. *Merrill*, 1 Me., 17, 20.

On the complete record, though in every respect there had been strict accuracy, no other verdict than that returned could rightfully have been found. Where, on examination of the evidence independent of that admitted over objection, and the full charge, it is apparent that the jury was not misled, or the result influentially affected by the objected evidence, or by any erroneous ruling, or misdirection, exceptions will not be sustained. *Farrar* v. *Merrill*, supra; *French* v. *Stanley*, supra; *Noyes* v. *Shepherd*, 30 Me., 173; *Stephenson* v. *Thayer*, 63 Me., 143; *Look* v. *Norton*, 94 Me., 547, 48 A., 117; *Elliott* v. *Sawyer*, 107 Me., 195, 77 A., 782; *Gordon* v. *Conley*, 107 Me., 286, 78 A., 365; *Mencher* v. *Waterman*, 125

Me., 178, 132 A., 132; *Gilman* v. *Bailey Carriage Co., Inc.*, 127 Me., 91, 141 A., 321; *Dufour* v. *Stebbins*, 128 Me., 133, 145 A., 893.

*Motion overruled.*
*Exceptions overruled.*