Hazel A. KLEINSCHMIDT

v.

Maurice MORROW, d/b/a Maurice Morrow Construction.

Supreme Judicial Court of Maine.

Submitted on Briefs March 1, 1994.
Decided May 18, 1994.

David M. Lipman, Peter B. Bickerman, Lipman & Katz, Augusta, for plaintiff.

Alan F. Harding, Hardings Law Offices, Presque Isle, for defendant.

Before WATHEN, C.J., ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ., and COLLINS, A.R.J.*

GLASSMAN, Justice.

Maurice Morrow, d/b/a Maurice Morrow Construction, appeals and Hazel A. Kleinschmidt cross-appeals from the entry of a judgment after a jury-waived trial in the Superior Court (Lincoln County, *Perkins, J.*) awarding compensatory damages to Kleinschmidt on her complaint against Morrow. Morrow contends that the trial court . erred in refusing to issue further findings of fact and conclusions of law and the evidence does not support the damages assessed against him.[1] By her cross-appeal, Kleinschmidt contends that the trial court erred in refusing to award punitive damages to her on her claim for abuse of process and in refusing to grant her attorney fees pursuant to the Maine Unfair Trade Practices Act

---

* Justice Collins participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity of Active Retired Justice.

1. Because it is raised for the first time by this appeal, we decline to address Morrow's conten-

tion that the existence of a mutual mistake of fact precludes the finding of an enforceable contract between the parties. *See Kelly v. University of Maine*, 623 A.2d 169, 171 (Me.1993) (party who raises an issue for the first time on appeal will be deemed to have waived the issue).

(UTPA), 5 M.R.S.A. §§ 205–A to 214 (1989). For the reasons set forth herein we affirm the judgment.

## I.

Based on the evidence, the trial court could have found the following facts: On April 6, 1989, the parties entered into a contract that provided Morrow would construct a new house adjacent to and on the same property as Kleinschmidt's existing house in Jefferson at a cost of $68,200. The contract acknowledged the receipt by Morrow of a $20,000 deposit and recited that the balance was "to be paid when house is sold or other arrangments [sic] are made." Although the contract did not state the completion date, Morrow told Kleinschmidt that it would take between two and three months to build a house.

In April 1989 Morrow began construction of the new home. By June 1989 Morrow had completed approximately one-half of the work and had depleted the $20,000 deposit. Despite the fact that the contract made no provision for progress payments, Morrow refused to perform further work on the new house until he received further payment. Because Morrow told her that it was important to get the windows and siding installed, Kleinschmidt paid an additional $2000 to Morrow for this work. When Morrow again requested further payment, Kleinschmidt refused and hired her own electrician to perform necessary electrical work. When the construction work ceased in late July or early August of 1989, the house was still not completed. On inquiry by Kleinschmidt to determine when Morrow was going to complete the house, Morrow stated that he would resume work on the house when Kleinschmidt obtained more money. Kleinschmidt contacted Morrow again in August 1989 to discuss completion of the roof, but Morrow stated, "I do not want anything more to do with the house, that's it, I am all done working for you."

In January 1990 Kleinschmidt had an opportunity to sell her old house, and after receiving a down payment on the purchase price, she contacted Morrow to request that he finish the new house. Morrow again refused. The sale of the old house did not materialize because the new house remained unfinished. Kleinschmidt contacted another contractor, Lawrence Terrio, to discuss completion of the new house. After examining the site, Terrio discovered numerous defects in Morrow's workmanship. According to Terrio, because of defects in the placement and quality of trusses, rafters, and studs, it would be necessary to "gut" the house and redo the work. Terrio estimated that the cost of completing the house according to the original plans would be $47,500.

On April 11, 1990, Morrow filed a statement of lien in the Registry of Deeds, claiming a lien on both the new and the old house. Although he had received full payment for all labor and materials furnished by him, Morrow claimed a lien for an outstanding balance for work performed in the amount of $48,200 and misrepresented the date on which services were last performed. His stated purpose for filing the lien was to encumber Kleinschmidt's title so that he could get paid, to prevent Kleinschmidt from getting anyone else to work on the house, and to prevent the sale of the old house. Although Morrow received a letter from Kleinschmidt's counsel requesting that the lien be released, Morrow took no action to perfect or release the lien. In October 1991 and again in April 1992, Kleinschmidt's applications for financing to complete the new house were rejected because of the statement of lien filed by Morrow.

## II.

Kleinschmidt filed the instant action in the District Court (Wiscasset) seeking compensatory damages for Morrow's alleged breach of the construction contract and compensatory and punitive damages for Morrow's alleged abuse of process. For Morrow's alleged violation of the UTPA, she sought an injunctive order requiring Morrow to file a notice of release of the lien and payment of her attorney fees. After the matter was removed to the Superior Court, Morrow's counterclaim seeking damages for Kleinschmidt's alleged breach of the construction contract was dismissed with prejudice as a sanction for Morrow's failure to comply with the court's order

relating to discovery. Following a jury-waived trial, the court awarded to Kleinschmidt $2300 in compensatory damages on her claim for Morrow's breach of contract, $8000 in compensatory damages on her claim for his abuse of process and declared the lien filed by Morrow to be null and void. The court found that Kleinschmidt was not entitled to punitive damages for Morrow's abuse of process and held that she was not entitled to recover her attorney fees pursuant to the UTPA because Kleinschmidt did not suffer a "loss" within the meaning of 5 M.R.S.A. § 213 (1989). Morrow's motion for findings of fact and conclusions of law was denied. From the judgment entered accordingly, Morrow appeals and Kleinschmidt cross-appeals.

## III.

■ At the outset, we reject Morrow's contention that the trial court improperly denied Morrow's motion for findings of fact and conclusions of law. The trial court issued a six-page decision that includes detailed factual findings and conclusions of law. When, as here, a trial court's findings of fact and conclusions of law appear within the court's decision, the court need not grant a request for findings of fact and conclusions of law. *Bayley v. Bayley*, 602 A.2d 1152, 1153 (Me.1992); *see also* M.R.Civ.P. 52. Moreover, we note that Morrow did not move for specific findings of fact and conclusions of law. *See Murray v. Murray*, 529 A.2d 1366, 1368, n. 1 (Me.1987) ("It is ... incumbent on litigants to move for *specific* findings of fact and conclusions of law in those cases in which the development of the facts and statement of the rationale is ... not sufficiently developed in, the court's decision." (Emphasis added)).

■ Morrow next contends because he did not perfect the lien in accordance with 10 M.R.S.A. § 3255(1) (Supp.1993)[2] the filing of a statement of lien could not result in damages to Kleinschmidt.[3] We disagree. The tort of abuse of process requires "use of the process in a manner *not proper* in the regular conduct of the proceedings...." *Nadeau v. State*, 395 A.2d 107, 117 (Me.1978) (emphasis added). An award of damages will be set aside only "when the record presents no rational basis by which the factfinder could have arrived at the amount awarded." *Titcomb v. Saco Mobile Home Sales, Inc.*, 544 A.2d 754, 758 (Me.1988). Morrow filed a lien statement that grossly misstated material facts as to the amount he was owed and the last date he performed services on the new house. He testified, *inter alia*, that by filing a statement of lien he intended to prevent completion of the new house by anyone else and the sale of the old house. He refused to comply with Kleinschmidt's request to release the lien. There is also evidence that the recorded lien statement filed by Morrow was the basis for the bank's denial of Kleinschmidt's requests for loans necessary to finance the completion of the new house.

■ Kleinschmidt's uncontroverted testimony was that if the new house had been completed by January 1990, she would have rented the old house for $400 a month. We reject Morrow's contention that Kleinschmidt is not competent to testify as to the rental value of her real estate. We have previously held that an owner of real estate is competent to express her opinion of the property's value. *Dehahn v. Innes*, 356 A.2d 711, 722 (Me.1976). Any objection raised by Morrow as to Kleinschmidt's "actual familiarity with the particular property 'goes to the weight of the evidence, not to its admissibility'...." *Simmons v. State*, 234 A.2d 330, 332 (Me. 1967) (quoting *Kerr v. Great Atl. & Pac. Tea Co.*, 149 A. 618, 620 (Me.1930)). On this record the trial court properly could find that

---

**2.** Section 3255, subsection 1 provides, in pertinent part:

> **1. Enforcement by action.** The lien[] ... may be preserved and enforced by action against the debtor and owner of the property affected and all other parties interested therein, filed with the Superior Court or District Court clerk ... within 120 days after the last of the labor or services are performed....

**3.** At no time during the proceedings did Morrow challenge the allegation in Kleinschmidt's complaint that his conduct constituted an abuse of process. Accordingly, we assume without deciding that the filing of a statement of lien setting forth material misstatements of fact constitutes an abuse of process.

Morrow's conduct resulted in damages suffered by Kleinschmidt in the amount of $8000, representing lost rental income in the amount of $400 for a period of twenty months.

■ Morrow's contention that the $2300 awarded to Kleinschmidt for Morrow's breach of contract is also supported by the record. It is undisputed that Kleinschmidt paid a total of $23,000 toward the completion of the new house. Lawrence Terrio, the contractor contacted by Kleinschmidt after Morrow refused to complete construction, testified that it would cost $47,500 to complete the house according to the original design, resulting in a total cost to Kleinschmidt of $70,500 rather than the original contract price of $68,200. The trial court properly rejected Morrow's contention that Terrio overestimated this cost by $2000 because Terrio misunderstood the extent to which the septic work had been performed. It is true that Terrio mistakenly believed that the bed for the septic system had not been completed. Terrio testified, however, that in the course of preparing his estimate he consulted the excavation subcontractor who performed the original septic work and used this subcontractor's price to calculate the estimated cost for properly completing the septic system. The trial court was warranted in concluding that Terrio's mistake did not affect his estimate.

## IV.

■ Turning to Kleinschmidt's cross-appeal, we reject Kleinschmidt's contention that the trial court improperly refused to award her punitive damages for Morrow's abuse of process. Punitive damages are available if the plaintiff can establish by clear and convincing evidence that the defendant's conduct was motivated by malice, express or implied. *Haworth v. Feigon,* 623 A.2d 150, 159 (Me. 1993). We cannot say that the evidence of malice presented by Kleinschmidt is "of such a nature that the factfinder was compelled to believe it." *See Gonthier v. Horne,* 576 A.2d 745, 747 (Me.1990) (determination that party

failed to carry burden of proof will be reversed on appeal only if evidence is such that factfinder was compelled to believe it). Moreover, Kleinschmidt cites no authority for the proposition that the trial court's finding that Morrow's conduct was "reprehensible" is equivalent to a finding of malice.

■ We turn finally to Kleinschmidt's contention that the trial court improperly refused to grant her any relief pursuant to section 213 of the UTPA. As applicable to this case,[4] section 213 provided:

1. **Court action.** Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of [an unfair trade practice] may bring an action ... for restitution and for such other equitable relief, including an injunction, as the court may deem to be necessary and proper....

2. **Fees and costs.** If the court finds, in any action commenced under this section that there has been a violation of section 207, the petitioner shall ... be awarded reasonable attorney's fees....

5 M.R.S.A. § 213(1), (2) (1989). The trial court held that because Kleinschmidt did not suffer a loss for which restitution is available, she was not entitled to recover her reasonable attorney fees pursuant to section 213.

We have previously stated, "The consumer has no private action under the UTPA, even if unfair trade practices have in fact been committed, unless those practices have not only harmed the consumer but also benefited the dealer." *Drinkwater v. Patten Realty Corp.,* 563 A.2d 772, 777 (Me.1989). *See also Banville v. Huckins,* 407 A.2d 294, 299 (Me. 1979) (private action pursuant to section 213 only available for consumer to recover benefits conferred on person causing loss of money or property); *Bartner v. Carter,* 405 A.2d 194, 203–04 (Me.1979) (claim of plaintiff not cognizable pursuant to section 213).

4. Section 213 was amended by P.L. 1991, ch. 536, § 1 (effective October 9, 1991) to authorize a consumer's action for damages. Because this action was commenced prior to the effective date of this amendment, the current statute is not applicable to this case. P.L. 1991, ch. 536, § 3.

Here, although Kleinschmidt sought and secured the equitable relief of an injunction, none of the counts of her complaint stated a claim for recovery of benefits conferred on Morrow by reason of any alleged violation of the UTPA by Morrow. Accordingly, the trial court properly determined she was not entitled to her reasonable attorney fees pursuant to section 213.

The entry is:

Judgment affirmed.

All concurring.